UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:    6/30/26

LASHON HOLLINGTON,

                    Plaintiff,

-against-

READY SET LEARN CHILD CARE
CENTER LLC, AND HABITOT ES LLC

                    Defendants.

22-CV-9908 (JGK) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. JOHN G. KOELTL**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Lashon Hollington seeks damages and related relief from defendants Ready Set Learn Child Care Center LLC (RSL CCC) and Habitot ES LLC (Habitot ES) pursuant to Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*., the New York State Human Rights Law (NYSHRL), N.Y. Executive Law § 290 *et seq*., and the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code § 8-107 *et seq*. Plaintiff alleges that RSL CCC and Habitot ES discriminated against her on the basis of a disability, denied her a reasonable accommodation for that disability, and retaliated against her for engaging in protected activity when they fired her from her job as a lead teacher at the Ready Set Learn Child Care Center in the Bronx (the Childcare Center) after she requested additional medical leave for knee surgery.[1]

On March 3, 2023, the Clerk of Court issued certificates of default against RSL CCC and Habitot ES. On May 23, 2023, the Hon. John G. Koeltl, United States District Judge, granted plaintiff's motion for a default judgment against them, in an amount to be determined at inquest, and referred the case to me for that purpose. After careful review of the file, I recommend that

---

[1] Plaintiff originally sued a third defendant, identified as Ready Set Learn, LLC (RSL LLC), alleging that all three defendants employed plaintiff at the Childcare Center. *See* Compl. (Dkt. 1) ¶¶ 7-12. However, plaintiff agreed to dismiss her claims against RSL LLC on April 18, 2023, conceding that it is an entity "unrelated" to RSL CCC and that it "never employed Ms. Hollington[.]" (Dkt. 37.) The Court thereupon dismissed RSL LLC from the case. (Dkt. 40.)

plaintiff be awarded damages in the amount of $155,231.26, consisting of $131,281.86 in back pay, $15,000 in emotional distress damages, and $8,949.40 in attorneys' fees and costs. In addition, plaintiff should be awarded $16,110.91 in prejudgment interest on the back pay award through the date of this Report and Recommendation, plus continuing prejudgment interest on that award, at the rate of $16.99 per day, until judgment is entered.

## I.    BACKGROUND

### A.    Factual Allegations

RSL CCC and Habitot ES (sometimes collectively referred to as Habitot) operate a "privately owned day care center" in the Bronx, New York, where plaintiff was hired as a lead teacher in October 2021. Compl. ¶¶ 7, 12, 19, 21, 26. Hollington was qualified for her position and "succeeded" in her role, "receiv[ing] positive feedback based on her performance." *Id*. ¶¶ 25-27.

A few months prior to her start at the Childcare Center, plaintiff suffered knee injuries, "including a torn meniscus and torn anterior cruciate ligament." Compl. ¶ 28. These injuries worsened in early 2022, requiring pain management treatments, including a "spinal epidural," and, ultimately, "arthroscopy surgery on her left knee." *Id*. ¶ 29. Pre-surgery, plaintiff's worsening injuries "impacted her ability to walk, stand, lift, bend, and work." *Id*. ¶ 30. Plaintiff "informed Habitot of the medical issues associated with her worsening knee injuries and provided corresponding doctor's notes." *Id*. ¶ 31.

During this time, the elevators at the Childcare Center "were frequently out of service, forcing [plaintiff] to walk up and down stairs to reach her classroom." Compl. ¶ 32. Moreover, plaintiff "was often required to walk her class to a playground located two blocks away from the school." *Id*. ¶ 33. Because of her knee injuries, plaintiff requested that Habitot "allow another teacher watch over her class during a walk to the playground." *Id*. ¶ 34. In response, the Director

2

of the Childcare Center, Katrina Holmes, "yelled at" plaintiff, stating "that if she needed another teacher to help, she was not able to do her job." *Id*. ¶ 36.

On February 11, 2022, plaintiff "took medical leave" in anticipation of knee surgery. Compl. ¶¶ 37-38. Plaintiff again provided "a doctor's note to Habitot, which explained her diagnosis and that she would be permitted to return to work following the surgery." *Id*. ¶ 39.[2] As it happened, plaintiff's surgery was delayed until March 10, 2022, due to "an insurance authorization issue and the surgeon's limited availability." *Id*. ¶ 40. On February 17, 2022, plaintiff "informed Habitot by email" of this delay, and asked "if she need[ed] [to] take any additional steps," but did not receive any response. *Id*. ¶ 40-41. A week later, on February 25, 2022, Hollington requested that Habitot apply her accrued time off to "any time she would be forced to take off work because she was not permitted to return until after the surgery, but received no response." *Id*. ¶ 42. On February 28, 2022, Hollington repeated the same request and again received no response. *See id*. ¶¶ 44-45. Finally, on March 1, 2022, Hollington repeated her request for a third time. *See id*. ¶ 46. This time, defendants responded by terminating her employment, "claiming that Hollington had not provided requested medical documentation, that 'three days out without any medical documentation is considered[] job abandonment' and that 'your classroom has been combined due to low enrollment, and your position is no longer needed.'" *Id*. ¶ 47.

---

[2] Plaintiff did not attach this note to her Complaint, but she later submitted it with her inquest materials. *See* Pl. Inquest Decl. (Dkt. 46) Ex. 1. The note, dated February 9, 2022, is from MedAlliance Medical Health Services in the Bronx, New York. It states that plaintiff was diagnosed with "osteoarthritis left knee," and that she "[m]ay not return to work/school until following surgery 2/17/22." *Id*.

### B.    Procedural History

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on April 28, 2022. Compl. ¶ 5. On November 9, 2022, the EEOC issued a Notice of Right to Sue, permitting her to file suit within 90 days of receipt. *Id*.

Plaintiff commenced this action on November 21, 2022 against RSL CCC, RSL LLC, and Habitot ES, asserting nine causes of action, including claims under the ADA, the NYSHRL, and the NYCHRL for discrimination on the basis of disability (Counts 1, 4, and 7), failure to accommodate (Counts 2, 5, and 8), and retaliation (Counts 3, 6, and 9). Compl. ¶¶ 50-119.

On December 6, 2022, Kiumarz Geula, on behalf of BGR LLC, "the majority owner of Habitot ES LLC," executed a waiver of service of summons on behalf of Habitot ES. (Dkt. 3.) Habitot ES's answer or other response to the Complaint was due 60 days from November 29, 2022 (the date on which the request for waiver was sent), *see* Fed. R. Civ. P. 4(d)(3); that is, by January 30, 2023. Plaintiff meanwhile served process upon RSL CCC and RSL LLC via the Secretary of State pursuant to N.Y. C.P.L.R. § 311(a) and N.Y. Bus. Corp. L. § 306(b)(1). (Dkts. 8-9.)

On March 3, 2023 – at which point none of the defendants had answered or appeared – plaintiff requested that the Clerk of Court issue certificates of default as to all three, and submitted proposed certificates for that purpose. (Dkts. 13-15.) In support of her request, she filed a declaration (Dkt. 16) attesting that the time for defendants to respond to the Complaint had expired, but that none of them had answered or otherwise responded. At this stage of the default process, Local Civil Rule 55.1(a) required her to submit – along with her declaration and the proposed certificates – "a certificate of service showing that the foregoing documents have been personally served on, or mailed to the last known . . . business address . . . of[] the party against whom default is sought." Local Civ. R. 55.1(a)(4). There is no indication on the docket that plaintiff Hollington

4

served these materials on any defendant. Nonetheless, the Clerk issued all three certificates of default on March 3, 2023, the same day the request was made. (Dkts. 17-19.)

On March 6, 2023, plaintiff filed a proposed Order to Show Cause for Default Judgment (OSC) (Dkt. 21), an unsworn Statement of Damages (Dkt. 23), and a declaration, signed by her counsel (Dkt. 26), attaching copies of the Complaint, counsel's time records, the waiver of service by Habitot ES, the affidavits showing service of process on RSL CCC and RSL LLC, and the three signed certificates of default issued by the Clerk. At this stage of the default process, Local Civil Rule 55.2(a) required plaintiff to submit – along with the required declaration and its attachments – "a certificate of service stating that all documents in support of the request for default judgment, including the 'Clerk's Certificate of Default,' and any papers required by this rule, have been personally served on, or mailed to the last known . . . business address . . . of[] the party against whom default is sought." Local Civ. R. 55.2(a)(3). Once again, there is no indication on the docket that such service was made.

On March 7, 2023, Judge Koeltl issued the requested OSC, directing defendants to respond in writing by April 3, 2023, and warning that if they failed to do so, "judgment may be entered against them and the defendants will have no trial." (Dkt. 27.) On March 21, 2023, plaintiff filed affidavits of service attesting that the OSC itself (but not its underlying materials) was served upon RSL CCC on March 13, 2023, and upon RSL LLC and Habitot ES on March 9, 2026, in each case through the Secretary of State. (Dkts. 29-31.) Thereafter, as noted above, plaintiff agreed to dismiss her claims against RSL LLC. However, neither RSL CCC nor Habitot ES ever appeared or defended against plaintiff's claims.

On April 18, 2023, Judge Koeltl issued another Order to Show Cause (Second OSC) (Dkt. 38), directing RSL CCC and Habitot ES to show cause no later than May 9, 2023 why a

5

default judgment should not be entered against them. (Dkt. 40). There is no indication on the docket that the Second OSC was served upon these defendants. On May 23, 2023, after neither of them appeared or responded, Judge Koeltl granted plaintiff's motion for a default judgment against RSL CCC and Habitot ES, and referred the case to me for an inquest into damages. (Dkt. 41.)

On August 18, 2023, in response to my Scheduling Order for Damages Inquest (Sched. Order) (Dkt. 43), plaintiff filed her Proposed Findings of Fact and Conclusions of Law (Prop. Findings) (Dkt. 44), supported by plaintiff's inquest declaration and the declaration of her attorney, Alex Rissmiller (Rissmiller Inquest Decl.) (Dkt. 45), as well as a memorandum of law (Pl. Mem.) (Dkt. 47). That same day, at my direction (*see* Sched. Order ¶ 7), plaintiff served her inquest materials, together with the Scheduling Order itself, upon the defaulted defendants by mail. (*See* Dkt. 48.) The Scheduling Order gave the defaulted defendants a deadline of September 21, 2023, to oppose plaintiff's damages request. Sched. Order ¶ 8. However, they did not respond.

On June 17, 2026, the Court requested that plaintiff update her employment history since the date of her original inquest declaration, including her actual earnings in each job she held. (Dkt. 50.) On June 18, 2026, plaintiff submitted a supplemental declaration (Dkt. 51), followed by a corrected supplemental declaration on June 19, 2026 (Pl. Supp. Decl.) (Dkt. 52), providing the requested information.

### C.     Damages Evidence

Plaintiff attests that she earned $52,000 annually while employed by defendants at the Childcare Center. Pl. Inquest Decl. ¶ 11. After she was terminated, and despite "diligently searching for comparable employment," plaintiff was "unable to obtain employment" for a full year, until March 1, 2023, when she began working as a substitute teacher for TemPosition, Inc., d/b/a School Professionals (TemPosition). *Id*. ¶¶ 7, 13. Between March 1 and August 18, 2023,

6

plaintiff earned $7,910.00 at TemPosition. *Id*. ¶¶ 7-9 & Ex. 2. Thereafter, from August 18, 2023 to May 29, 2024, she earned another $16,134.38 at TemPosition, for a total of $24,044.38. Pl. Supp. Decl. (Dkt. 52-1) ¶ 2.

After her position with TemPosition ended, plaintiff was not employed again until "on or about August 1, 2024," when she began working at Behaviors of NYC Licensed Behavior Analyst Therapy, PLLC (Behaviors of NYC). Pl. Supp. Decl. ¶¶ 3-4. Between August 1 and November 15, 2024, plaintiff earned $12,083.33 at Behaviors of NYC. *Id.* ¶ 4.

For the next approximately seven months, until April 29, 2025, plaintiff was again unemployed. Pl. Supp. Decl. ¶ 5. However, she received $6,693.75 in unemployment insurance benefits. *Id*. ¶ 6. From April 29 to October 2, 2025, plaintiff earned $2,700.14 by working for Dynamic Intervention. *Id*. ¶ 7. From July 18 through August 20, 2025 (while also employed at Dynamic Intervention) plaintiff worked for ABC Mental Health, earning another $1,919.01. *Id*. ¶ 8. In October 2025, plaintiff began working for Brightstar Early Childhood Center (Brightstar), where she remains employed. *Id*. ¶ 9. From October 2025 through May 2026, plaintiff was paid $21,438.82 by Brightstar. *Id*. All told, over the more than four years since defendants terminated plaintiff's employment at the Childcare Center, she has earned $62,185.68 in wages, and has received an additional $6,693.75 in unemployment insurance benefits.

Plaintiff further attests that the termination of her employment by defendants caused her to experience "emotional distress and persistent anxiety," for which she received weekly therapy from December 2022 to the date of her initial inquest submissions. Pl. Inquest Decl. ¶ 6.

Plaintiff seeks back pay for the period from March 1, 2022 to March 1, 2023, in the full amount of her Habitot salary ($52,000); additional back pay for the period from March 1, 2023 to May 23, 2023 (the date on which the District Judge granted plaintiff's motion for a default

judgment), measured by the difference between her Habitot salary and her wages at TemPosition; two additional years of "front pay" for the period from May 23, 2023 to May 23, 2025, measured by the difference between her Habitot salary and her "current earnings"; $30,000 in "garden variety" emotional distress damages; $7,945 in attorneys' fees; $1,004.40 in costs; and prejudgment interest on the back pay portion of the damages award. Prop. Findings ¶¶ 21-23; *see also* Rismiller Inquest Decl. ¶ 3 & Ex. 2 (attorney time records reflecting 22.7 hours of work on this case, at $350 per hour).

## II.    ANALYSIS

### A.    Jurisdiction

I am satisfied that this Court has subject-matter jurisdiction over plaintiff's claims. This Court has original jurisdiction over plaintiff's ADA claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.

I am also satisfied that plaintiff properly served the defaulted defendants with process, as required "[b]efore a federal court may exercise personal jurisdiction over a defendant." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). "The plaintiff bears the burden of showing that proper service of process was completed." *Stormhale, Inc. v. Baidu.com, Inc.*, 675 F. Supp. 2d 373, 374 (S.D.N.Y. 2009). Habitot ES, which is a New York limited liability company (LLC), *see* Compl. ¶ 11, executed a waiver of service on December 6, 2022 (Dkt. 3), such that "proof of service is not required," the Complaint having been deemed served "at the time of filing the waiver." Fed. R. Civ. P. 4(d)(4). As for RSL CCC, which is also a New York LLC, *see* Compl. ¶ 9, service was effected on the New York Secretary of State on January 5, 2023 (Dkt. 8), in compliance with N.Y. C.P.L.R. § 311(a) and N.Y. Bus. Corp. L. § 306(b)(1), as permitted by Fed. R. Civ. P. 4(h)(1)(A) and 4(e)(1). *See Great Bowery, Inc. v. Royal Beauty Studio Inc.*, 2026 WL

8

1029641, at *6 (E.D.N.Y. Apr. 16, 2026) (confirming that a New York LLC may be properly served by delivery of the summons and complaint to the New York Secretary of State).

Finally, I am satisfied that this Court has personal jurisdiction over defendants RSL CCC and Habitot ES, which is "a necessary prerequisite to entry of a default judgment." *Reilly v. Plot Commerce*, 2016 WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016) (quoting *Sheldon v. Plot Commerce*, 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016), *adopted*, 2016 WL 5107058 (E.D.N.Y. Sept. 19, 2016)). Because both of the defaulted defendants are New York LLCs conducting business in the Bronx, *see* Compl. ¶¶ 9, 11-12, they are subject to this Court's general personal jurisdiction pursuant to CPLR § 301. *See Great Bowery*, 2026 WL 1029641, at *7 (collecting cases).

**B.      Service of the Default Materials**

Before addressing the adequacy of plaintiff's factual allegations, I must consider whether her failure to serve defendants with her request to enter default and her proposed OSC, as required by Local Civil Rules 55.1(a)(4) and 55.2(a)(3), is fatal to her quest for a damages judgment against them. I conclude that the Court has the discretion to overlook these lapses. "Although the case law addressing this issue is sparse, several judges in this District have concluded that where, as here, the defaulted defendant was properly served with the summons and complaint, but failed to answer or otherwise respond to the lawsuit, a damages judgment may be entered without proof that the default motion papers (or any additional papers beyond the summons and complaint) were also served on that defendant." *Flores Garcia v. Grocery-Taqueria Mexicana Corp.*, 2022 WL 17979917, at *4 (S.D.N.Y. Nov. 29, 2022) (citing *Moskovitz v. La Suisse*, 2013 WL 6197163, at *3 (S.D.N.Y. Nov. 25, 2013)), *adopted sub nom. Garcia v. Grocery-Taqueria Mexicana Corp.*, 2022 WL 17978895 (S.D.N.Y. Dec. 28, 2022).

As Judge McMahon pointed out in *Moskovitz*, neither the Constitution nor the Federal Rules of Civil Procedure requires that a defaulted party "actually receive the papers in support of the motion for a default judgment." 2013 WL 6197163, at *3. In fact, where – as here – the defaulted parties were served with process (or waived service) but never appeared, "the Federal Rules don't require that a default judgment [motion] be served on [them] at all." *Id.*[3] Consequently, the *Moskovitz* court directed the entry of judgment against a third-party defendant, Caruso, which "was served with process in this case but has never appeared," explaining that Caruso "had the constitutionally requisite notice and opportunity to appear and contest jurisdiction of the facts," whether or not it received the default motion papers. *Id.*[4] Similarly, in *Allstar Marketing Group, LLC v. Adfaderal*, a trademark infringement case in which plaintiff sought damages from 299 defaulted defendants, Judge Parker recommended – and Judge Carter agreed – that damages be assessed against all of those defendants, including nine who were never served with the court's inquest scheduling order or plaintiff's inquest submissions, "because neither Federal Rule of Civil Procedure 55(b)(2) nor the SDNY local rules require that the clerk's certificate be served upon an opposing party who has not appeared and because every one of the Defendants was successfully served with the prior pleadings in this case." 2021 WL 5362640, at *3 n.7 (S.D.N.Y. Sept. 20,

---

[3] Fed. R. Civ. P. 55(b)(2) requires service of the default motion papers on the party against whom the judgment is sought only if that party has "appeared personally or by a representative." Local Civ. R. 55.2(a)(3) goes further, requiring that the default motion papers be mailed to the last known residence or business address of all parties against whom default judgments are sought. The Committee Notes explain that, although Fed. R. Civ. P. 55(b) does not require this step when the defaulted defendant never appeared in the action, it is "conducive to both fairness and efficiency."

[4] This was arguably a *dictum*, in that the default motion papers were mailed to Caruso at its last known address in London – as required by the Local Civ. R. 55.2(c) – but Caruso was "no longer located at [that] office address," and its registered agent in Liechtenstein "refused to accept delivery of the papers from Federal Express." *Moskovitz*, 2013 WL 6197163, at *1. Here, by contrast, there is no evidence of any mailing or other attempt by plaintiff to comply with Local Civil Rule 55.1(a)(4) or 55.2(a)(3).

2021), *adopted sub nom. Allstar Mktg. Grp., LLC v. Adfaderal*, 2021 WL 4892866 (S.D.N.Y. Oct. 19, 2021); *see also Garcia v. Rebecca Minkoff LLC*, 2025 WL 3897903, at *4 n.5 (S.D.N.Y. Nov. 24, 2025) ("Plaintiff's failure to serve her inquest submissions on RMLLC, standing alone, would not prevent this Court from awarding damages on default."), *adopted in relevant part*, 2026 WL 37308 (S.D.N.Y. Jan. 5, 2026).

In this case, the two remaining defaulted defendants were served with (or waived service of) the summons and Complaint at the outset of the case, but failed to appear and defend. In addition, they were served with Judge Koeltl's initial OSC, which advised them that plaintiff had obtained certificates of defaults against each of them, and warned them that they were required to act by April 3, 2023 (later extended to May 9, 2023) if they wished to oppose plaintiff's motion for the entry of a default judgment. Thereafter, they were served with my Scheduling Order, which clearly advised them that "the District Judge has issued an Order (Dkt. 41) granting plaintiff's motion for a default judgment" against them; that an inquest into damages was taking place; and that that they were required to file any opposition papers by September 21, 2023. Sched. Order ¶¶ 1-8. Neither the Due Process Clause nor Rule 55 of the Federal Rules of Civil Procedure requires more than this. *Moskovitz*, 2013 WL 6197163, at *3-4; *see also GS Holistic, LLC v. Amazing Store & Smoke Shop Inc.*, 2026 WL 1640476, at *2 n.3 (S.D.N.Y. May 6, 2026) ("Here, Plaintiff served Saleha with the summons and Amended Complaint, along with the Motion and Damages Submissions, so Saleha, despite having not been served with the Inquest Order, had sufficient notice of the potential for a default judgment in this case."), *adopted sub nom. GS Holistic, LLC v. Amazing Store & Smokeshop Inc*, 2026 WL 1637997 (S.D.N.Y. June 5, 2026). Consequently, although I do not condone plaintiff's failure to comply with the Local Civil Rules, I will proceed to review her inquest submissions on the merits.

### C.    Liability

#### 1.    Legal Standard

Following a default, all well-pleaded factual allegations in the complaint as to liability are "deemed admitted." *S.E.C. v. Razmilovic*, 738 F.3d 14, 19 (2d Cir. 2013), *as amended* (Nov. 26, 2013); *accord City of N.Y. v. Mickalis Pawn Shop*, 645 F.3d 114, at 137 (2d Cir. 2011); *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). However, a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015) (summary order). The court must therefore determine "whether the allegations in a complaint establish the defendants' liability as a matter of law." *Id.* (citing *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)). If the well-pleaded factual allegations establish the defaulted party's liability, the only remaining issue is "whether Plaintiff has provided adequate support for the [requested] relief[.]" *Gucci Am., Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). Conversely, if the well-pleaded factual allegations in the complaint fail to state a claim upon which relief can be granted, no damages can be awarded, even if the post-default inquest submissions supply the missing information. *See United States ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc.*, 2014 WL 4652712, at *4 (S.D.N.Y. Sept. 2, 2014) (holding that "'[i]t is the . . . [c]omplaint, not the inquest submissions, that establishes defendants' liability'") (quoting *Gutman v. Klein*, 2010 WL 4975593, at *10 (E.D.N.Y. Aug. 19, 2010)) (alterations in original).

#### 2.    "Disability" Under The ADA

Under the ADA, "'disability'" is defined "to include, *inter alia*, 'a physical or mental impairment that substantially limits one or more major life activities.'" *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 (2d Cir. 2021) (quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020)); *see*

12

*also* 42 U.S.C. § 12102(1)(A) ("disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual"); 29 C.F.R. § 1630.2(i)(1) ("Major life activities" include "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working[.]").

Prior to the ADA Amendments Act of 2008 (ADAAA), Pub. L. No. 110-325, 122 Stat. 3553, the definition of "disability" under the ADA was interpreted narrowly by the courts, to exclude "temporary injuries" lasting only a few weeks or months. *See, e.g.*, *Fouad v. Jeport Hotel Corp.*, 2005 WL 1866329, at *2 (S.D.N.Y. Aug. 5, 2005) ("Courts within this circuit, and the vast majority of courts elsewhere, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary injuries are not disabled persons within the meaning of the act."); *accord Graaf v. N. Shore Univ. Hosp.*, 1 F. Supp. 2d 318, 321 (S.D.N.Y. 1998). Even after the passage of the ADAAA in 2008, courts in our Circuit (and elsewhere) continued to dismiss ADA cases brought by plaintiffs like Hollington, who were temporarily disabled by reparable injuries, including knee injuries. *See, e.g.*, *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 296 (S.D.N.Y. 2014) (granting summary judgment where "[t]here [was] no dispute that Plaintiff's knee injury was . . . temporary and lasted fourteen weeks"); *Dudley v. New York City Hous. Auth.*, 2014 WL 5003799, at *34 (S.D.N.Y. Sept. 30, 2014) (dismissing plaintiff's ADA claims on summary judgment because they "relate only to a temporary injury while he was recovering after surgery for a torn meniscus").

In *Hamilton*, however, the Second Circuit emphasized that the ADAAA "relaxed the temporal requirements for establishing a 'disability,'" 3 F.4th at 92, and reversed a district court

decision dismissing plaintiff's ADA claims on the ground that his dislocated knee and torn meniscus (which caused him severe pain, forced him to use crutches, and restricted his movements) were temporary and hence did not constitute a "qualifying disability" under the ADA. *Id*. at 89-90, 93. On remand, the district court noted that plaintiff had only been injured for "a period of weeks" when he filed his complaint, but – applying "this new guidance from the Circuit" – held that since his injuries "substantially limited his ability to walk and stand," plaintiff was "a qualifying individual with a disability under the ADA." *Hamilton v. Westchester Cnty.*, 2022 WL 4087956, at *4 (S.D.N.Y. Sept. 6, 2022); *see also, e.g.*, *Paige v. Garvan's Rock & Rye, LLC*, 2025 WL 3201762, at *2 (S.D.N.Y. Nov. 14, 2025) (denying summary judgment to defendants where plaintiff reported a knee injury to his supervisor on June 22, obtained a doctor's note on July 27 that excused him from work for six weeks, and was fired on August 30, while on medical leave).

Here too, although plaintiff does not allege that her knee injuries were permanent (or even long-term), she clearly alleges that they required "pain management," Compl. ¶ 29; "impacted her ability to walk, stand, lift, bend, and work," *id*. ¶ 30, which are major life activities; and ultimately had to be treated surgically, causing her to be out of work until the procedure could be performed. *Id*. ¶¶ 37-39. Assuming the truth of these allegations – as required after default – I conclude that plaintiff has adequately alleged that she was "a qualifying individual with a disability under the ADA." *Hamilton*, 2022 WL 4087956, at *4.

### 3.      Disability Discrimination

The elements of a prima facie case for disability discrimination under Title I of the ADA are that: "(1) the employer is subject to the ADA, (2) the employee is disabled or is perceived to be disabled as defined by the ADA, (3) the employee is qualified to perform the essential functions of the job, with or without reasonable accommodations, and (4) the employee suffers an adverse employment action because of [her] disability." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th

14

159, 166 (2d Cir. 2024). Plaintiff's factual allegations, taken as true after default, are sufficient to state a cause of action against the defaulted defendants for discrimination under the ADA.

First, she alleges that RSL CCC and Habitot ES, which "exercised joint control over [her] employment," had "more than 14 employees throughout plaintiff's employment." Compl. ¶¶ 13-14. They were therefore "covered by" and subject to Title I of the ADA. *Clackamas Gastroenterology Assocs., P. C. v. Wells*, 538 U.S. 440, 441-42 (2003) (citing 42 U.S.C. § 12111(5)). Second, as discussed above, plaintiff adequately alleges that she was disabled, as that term is used in the ADA, when defendants terminated her employment. She further alleges that she was qualified to perform the essential functions of her job. *See* Compl. ¶¶ 23-25 (describing her professional qualifications); *id*. ¶ 26-27 (alleging that she received "positive feedback" for her work as a lead teacher); *id*. ¶ 49 (alleging that if defendants had extended plaintiff's leave through her surgery, scheduled for March 10, 2022, "she would have been able to return to work following the surgery and perform the essential functions of her position"). Lastly, plaintiff alleges that she suffered an "adverse employment action," namely, the "termination of [her] employment," "because of [her] disability." *Sharikov*, 103 F.4th at 166-67. Specifically, plaintiff alleges that she was fired on March 1, 2022, while out on medical leave for her knee injuries (and after submitting a doctor's note and repeatedly requesting she be allowed to apply her accrued time off or otherwise extend her leave until the surgery), on the pretext that she failed to provide "medical documentation" and consequently that what she believed to be medical leave was "considered . . . job abandonment." Compl. ¶¶ 39, 42, 44, 47, 49. As in *Paige*, "[t]he temporal proximity of these events provides enough evidence of causation to carry the low burden of establishing a *prima facie* case of disability discrimination." 2025 WL 3201762, at *4.

15

"In this Circuit, . . . disability-based discrimination claim[s] under the NYSHRL and NYCHRL involve the 'same elements' as an ADA claim," *Jernigan v. Dalton Mgmt. Co.*, 2011 WL 3273514, at *3 (S.D.N.Y. July 29, 2011) (quoting *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010)), and are "evaluated using the same standard[.]" *Udoh v. New York City Dep't of Prob.*, 2025 WL 2199613, at *5 (S.D.N.Y. Aug. 1, 2025), *reconsideration denied,* 2026 WL 710040 (S.D.N.Y. Mar. 13, 2026); *accord Moreno v. Cap. Concrete NY Inc.*, 2025 WL 2933100, at *8 (E.D.N.Y. Aug. 13, 2025), *adopted,* 2025 WL 2555609 (E.D.N.Y. Sept. 5, 2025); *Rochelle v. AutoZoners, LLC*, 2023 WL 5935835, at *6 (S.D.N.Y. Sept. 12, 2023); *Miller v. E. Midwood Hebrew Day Sch.*, 2021 WL 966166, at *3 (E.D.N.Y. Feb. 15, 2021), *adopted,* 2021 WL 965072 (E.D.N.Y. Mar. 15, 2021). Here, as in *Moreno*, "Plaintiff's NYSHRL and NYCHRL discrimination claims are based on the same allegations as [her] ADA claims. Plaintiff's allegations, therefore, are also sufficient to establish Defendants' liability for discrimination under the NYSHRL and NYCHRL." 2025 WL 2933100, at *8.

### 4.      Failure to Accommodate

Under the ADA, "[a] plaintiff may establish a *prima facie* case of failure to accommodate . . . by satisfying the same first three elements and, for the fourth element, showing that 'his employer refused to make a reasonable accommodation.'" *Paige*, 2025 WL 3201762, at *3 (quoting *Tudor v. Whitehall Cent. Sch. Dist.*, 132 F.4th 242, 246 (2d Cir. 2025)). Here, plaintiff alleges that she asked defendants to "extend[] her medical leave to accommodate her surgery postponement," but that, in response, defendants simply terminated her employment. Compl. ¶¶ 60-61. "[C]ourts have found that medical leave can constitute a reasonable accommodation under the ADA." *Samuels v. Urb. Assembly Charter Sch. for Computer Sci.*, 2024 WL 4008165, at *9 (S.D.N.Y. Aug. 30, 2024) (collecting cases). Courts have also found – not surprisingly – that a plaintiff can succeed on a failure to accommodate claim by showing that the defendants "cho[s]e

16

to terminate the plaintiff's employment, as opposed to making the accommodation of allowing [her] more time to heal from [her] injury." *Paige*, 2025 WL 3201762, at *4. Plaintiff has therefore adequately stated a prima facie claim under the ADA for failure to accommodate.

Here too, "[t]he same standard applies" to plaintiff's claims under the NYSHRL and the NYCHRL. *Lewis v. New York State Off. for People with Developmental Disabilities*, 2026 WL 866849, at *5 (S.D.N.Y. Mar. 30, 2026); *accord Haynes v. City of New York*, 2025 WL 946089, at *20 (S.D.N.Y. Mar. 27, 2025); *see also Lawtone-Bowles v. City of New York*, 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019) ("Courts apply the same standard for failure to accommodate cases under the ADA, . . . NYSHRL, and NYCHRL."). Accordingly, plaintiff has adequately pleaded a failure to accommodate claim under all three statutes.

### 5.   Retaliation

Finally, to plead a retaliation claim under the ADA, the plaintiff must allege facts showing that "'(i) [the] plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.'" *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019)). Seeking reasonable accommodation of one's own disability constitutes protected activity under the ADA. *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 149 (2d Cir. 2002); *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999). Thus, plaintiff was engaged in protected activity when she asked to extend her leave through the delayed date of her surgery. Moreover, since she made that request directly to Habitot, including by email, *see* Compl. ¶¶ 40, 44, 46, defendants were aware of her protected conduct, and responded by terminating her employment, which is "indisputably" an "adverse employment action" for purposes of a retaliation claim. *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 70, 75 (S.D.N.Y. 2016).

"Causation may be shown either through direct evidence of retaliatory animus or 'indirectly, by showing that the protected activity was followed closely by discriminatory treatment.'" *Sharikov*, 103 F.4th at 170 (quoting *Tafolla*, 80 F.4th at 125). Here, plaintiff alleges that defendants fired her in direct response to her repeated request for extended leave, on the asserted ground (among others) that her initial leave constituted "job abandonment." Compl. ¶ 47. This is more than sufficient to satisfy the fourth retaliation element. *See Paige*, 2025 WL 3201762, at \*4 ("The temporal proximity between Paige beginning his worker's compensation leave on August 3 and his employment being terminated on August 30 is sufficient to meet his low burden to establish a *prima facie* case of retaliation[.]")

In most respects, "the standards for a retaliation claim under the NYCHRL and NYSHRL are more forgiving than under the ADA," because "an adverse employment action is not a required element under NYSHRL and NYCHRL." *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 252 n.16 (S.D.N.Y. 2025); *see also Moore v. Hadestown Broadway Ltd. Liab. Co.*, 722 F. Supp. 3d 229, 247 (S.D.N.Y. 2024) ("Plaintiff shoulders a more relaxed burden to plead a sufficient retaliation claim under the NYCHRL and the NYSHRL," because the complaint "need not plead that the plaintiff suffered an adverse employment action.") However, at the time defendants terminated plaintiff's employment, "the NYSHRL, unlike the ADA, [did] not recognize requests for reasonable accommodation as protected activity." *Kim v. Regeneron Pharms., Inc.*, 2026 WL 820603, at \*11 (S.D.N.Y. Mar. 25, 2026); *see also Medina v. AAM 15 Mgmt. LLC*, 750 F. Supp. 3d 332, 347 (S.D.N.Y. 2024) ("Plaintiff cannot rely on her requests for reasonable accommodations as protected activity in connection with her NYSHRL retaliation claim.").[5]

---

[5] As Judge Preska explained in *Kim*, "[t]he NYSHRL was amended, effective December 5, 2025, to recognize requests for reasonable accommodations as protected activity for the purposes of retaliation claims. *See* 2025 Sess. Law News of N.Y. Ch. 600 (S. 3398) (amending N.Y. Exec.

18

Consequently, although plaintiff has adequately pleaded a retaliation claim under the ADA and the NYCHRL, she has not stated such a claim under the NYSHRL.

### D.    Damages

#### 1.    Legal Standard

Although the Court must accept all well-pleaded facts as true when determining liability, it need not – and indeed cannot – rely on the allegations in the complaint to establish the plaintiff's damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default . . . is not considered an admission of damages."). Rather, the plaintiff must substantiate its claimed damages with "admissible, authenticated evidence," *McLaughlin v. Barron*, 2018 WL 1872535, at *2 (S.D.N.Y. Jan. 24, 2018), *adopted*, 2018 WL 993627 (S.D.N.Y. Feb. 20, 2018), and that evidence must be sufficient to "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155; *see also Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (Even if the defaulted defendant has not made any submission in response to a damages inquest, the Court "must assess whether the plaintiff has provided a sufficient basis for the Court to determine damages.").

There is a two-step analysis to determine the appropriate amount of money damages to be awarded: (1) "determining the proper rule for calculating damages" and (2) "assessing plaintiff's evidence supporting the damages." *Credit Lyonnais,* 183 F.3d at 155; *accord Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F. Supp. 2d 492, 500 (S.D.N.Y. 2013). The district court may hold a hearing to assess the amount of damages that should be awarded after default, *see* Fed. R. Civ. P.

---

Law. § 296(7)). However, the amendment specified that it was to be applied only to those actions 'filed on or after the effective date.' *Id*. Accordingly, Plaintiff's claim must be evaluated under pre-amendment interpretation of the NYSHRL, which did not recognize accommodation requests as protected activity." 2026 WL 820603, at *11 n.9.

19

55(b)(2), but is not required to do so. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (recognizing that courts have discretion to determine damages for a defaulted defendant based on the written record); *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) ("[Rule] 55(b)(2) leaves the decision of whether a hearing is necessary to the discretion of the district court."). In this case, plaintiff did not seek an evidentiary hearing as to damages. Consequently, I have conducted the inquest based upon the written record.

### 2.    Back Pay

The ADA entitles a successful plaintiff to the same remedies that would be available under Title VII. *Sands v. Runyon*, 28 F.3d 1323, 1327 (2d Cir. 1994); *Tse v. New York Univ.*, 2016 WL 10907062, at *29 (S.D.N.Y. Aug. 29, 2016). One such remedy is back pay, which the court "may" award in its equitable discretion. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415-16 (1975); *see also Bethel v. Royal Leaf NY LLC*, 2025 WL 3216640, at *7 (S.D.N.Y. Oct. 9, 2025) ("The choice of whether to award back pay is left to the equitable discretion of the district court.") (quoting *Gilbert v. Hotline Delivery*, 2001 WL 799576, at *2 (S.D.N.Y. July 10, 2001)), *adopted*, 2025 WL 3216413 (S.D.N.Y. Nov. 18, 2025). Back pay is also available under the NYCHRL and the NYSHRL. N.Y. Exec. Law § 297(4), (9); N.Y.C. Admin. Code § 8-502(a); *Tse*, 2016 WL 10907062, at *29.

Typically, a wrongfully terminated plaintiff is awarded back pay "from the date of the discriminatory action to the date of judgment." *EEOC v. Joint Apprenticeship Comm. of Joint Indus. Bd. of Elec. Indus.*, 186 F.3d 110, 122 (2d Cir. 1999); *see also Clarke v. Frank*, 960 F.2d 1146, 1151 (2d Cir. 1992). However, "the method of assessing backpay is also a matter for the court's discretion," *Gilbert*, 2001 WL 799576, at *2, and "courts frequently abbreviate the period" if, for example, the plaintiff leaves the job market, enrolls in school, or becomes unable to work due to disability. *Id.*; *see also Monette v. Cnty. of Nassau*, 2015 WL 1469982, at *2 (E.D.N.Y.

20

Mar. 31, 2015) (awarding back pay "only for the period from plaintiff's termination on November 13, 2009, until December 31, 2009," because plaintiff would not foreseeably have continued his employment in Nassau County government after a new County Executive was sworn in on January 1, 2010).

In order to be eligible for back pay, the plaintiff "must attempt to mitigate her damages by using 'reasonable diligence in finding other suitable employment.'" *Dailey v. Societe Generale*, 108 F.3d 451, 455 (2d Cir. 1997) (quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982)). However, "[t]he plaintiff's duty is 'not onerous, and does not require [her] to be successful in mitigation.'" *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 93 (E.D.N.Y. 2020) (quoting *Dailey*, 108 F.3d at 456). Moreover, the defendant bears the burden of proving a lack of reasonable diligence, *Dailey*, 108 F.3d at 456, which a defaulted defendant cannot do. *See Press v. Concord Mortg. Corp.*, 2010 WL 3199684, at *2 (S.D.N.Y. Aug. 11, 2010) (awarding back pay after default, despite "conclusory" nature of plaintiff's claim regarding his mitigation efforts, because the defaulted defendants "have not met their burden of showing that Press's efforts to seek employment have been insufficient as an attempt to mitigate his damages"). Any back pay award is reduced by the plaintiff's "[i]nterim earnings or amounts earnable with reasonable diligence." 42 U.S.C. § 2000e-5(g)(1).

In this case, I find that plaintiff has adequately demonstrated that she used reasonable diligence to find other suitable employment. Although her testimony on this point is brief and conclusory, *see* Pl. Inquest Decl. ¶ 13, the defaulted defendants have presented no contrary evidence, and thus have not met their burden of showing that plaintiff's mitigation efforts were insufficient. *Press*, 2010 WL 3199684, at *2; *see also Becerril v. E. Bronx NAACP Child Dev. Ctr.*, 2009 WL 2611950, at *4 (S.D.N.Y. Aug. 18, 2009) (recommending back pay award where

plaintiff attested that she made diligent efforts to find new employment and the defaulted defendant submitted no contrary evidence), *adopted sub nom.*, *Becerril v. Ease Bronx NAACP Child Develpoment Ctr.*, 2009 WL 2972992 (S.D.N.Y. Sept. 17, 2009). Moreover, plaintiff did succeed in obtaining work in March 2023, and her employment history since then demonstrates that she has continued actively seeking employment. *See* Pl. Supp. Decl. ¶¶ 2-9.

Plaintiff seeks damages of $60,077.99 for the compensation she lost during the period from March 1, 2022 (the date of her termination) to May 23, 2023 (the date on which the District Judge granted plaintiff's motion for a default judgment), which she characterizes as "back pay," plus another $70,498.88 for the compensation she lost (or anticipated losing) during the ensuring two-year period, from May 23, 2023 to May 23, 2025, which she characterizes as "front pay." Prop. Findings ¶ 21. I agree that plaintiff should be awarded damages for the compensation she lost over the full time period she requests: March 1, 2022 to May 23, 2025 (three years and 83 days). However, with the benefit of her supplemental declaration, the Court can now calculate precisely how much compensation plaintiff lost over that period; that is, the difference between (i) the salary she would have made had she remained at the Childcare Center, and (ii) her actual wages earned over the same time period. Moreover, since it is now 2026, and no damages judgment has been entered,[6] the entire award for lost employment compensation is properly characterized as back pay (meaning, among other things, that plaintiff is eligible for prejudgment interest on that sum).

---

[6] In her inquest materials, plaintiff refers to May 23, 2023 as the "date of default judgment." Pl. Mem. at 7; Prop. Findings ¶ 21(b), (c). In fact, although the District Judge ruled on May 23, 2023, that plaintiff is "entitled to a default judgment," he did not (and could not have) entered a judgment prior to a determination of damages.

During the period from March 1, 2022 through May 23, 2025, plaintiff's lost compensation from her job at the Childcare Center was $167,825.01.[7] During the same period, she earned a total of $24,044.38 from TemPosition, *see* Pl. Inquest Decl. ¶ 8 ($7,910); Pl. Supp. Decl. ¶ 2 ($16,134.38); $12,083.33 from Behaviors of NYC, *see* Pl. Supp. Decl. ¶¶ 3-4; and $415.44 from Dynamic Intervention. *See id*. ¶ 7.[8] She is therefore entitled to $131,281.86 in back pay.[9]

### 3.    Front Pay

Front pay "represents compensation for future losses that the plaintiff would not suffer but for the discriminatory acts of the defendant." *Brady v. Wal-Mart Stores, Inc*., 2005 WL 1521407, at *7 (E.D.N.Y. June 21, 2005). "[A]n award of front pay under the ADA, as under Title VII, is discretionary." *Id*.; *see also Shannon v. Fireman's Fund Ins. Co.*, 136 F. Supp. 2d 225, 233 (S.D.N.Y. 2001) ("An award of front pay is exclusively within a court's discretion."). No front pay should be awarded where the calculation "would involve undue speculation," *Tse*, 2016 WL 10907062, at *29 (quoting *Shannon,* 136 F. Supp. 2d at 233), or where "the back pay award

---

[7] Plaintiff's annual salary at the Childcare Center was $52,000, *see* Pl. Inquest Decl. ¶ 3, which equates to a daily rate of $142.47. The damages period is three years plus 83 days (March 1 through May 23, 2025). The calculation is thus $52,000 + $52,000 + $52,000 + $11,825.01 ($142.47 times 83) = $167,825.01.

[8] Plaintiff earned a total of $2,700.14 from Dynamic Intervention between April 29, 2025 and October 2, 2025, a period of 156 days. *See* Pl. Supp. Decl. ¶ 7. This equates to a daily rate of $17.31. However, she only seeks damages through May 23, 2025. There are 24 days in the period April 29-May 23, 2025. Thus, plaintiff earned $415.44 ($17.31 times 24) from Dynamic Intervention during the damages period.

[9] During the damages period, plaintiff also received $6,693.75 in unemployment benefits. Pl. Supp. Decl. ¶ 6. In a discrimination case, however, "the decision whether or not to deduct unemployment benefits from a . . . back pay award rests in the sound discretion of the district court." *Dailey*, 108 F.3d at 460 (Title VII); *accord Tse*, 2016 WL 10907062, at *30 (ADA, NYSHRL, NYCHRL); *Becerril*, 2009 WL 2611950, at *4 (Title VII, PDA, NYSHRL, NYCHRL). Here, since the defaulted defendants terminated plaintiff's employment wrongfully, they "should not receive the benefit of having the plaintiff's unemployment compensation deducted from her total back pay award." *Becerril*, 2009 WL 2009 WL 2611950, at *4.

23

adequately redresses the loss that plaintiff is reasonably likely to have suffered." *Rodriguez v. Express World Wide, LLC*, 2014 WL 1347369, at \*6 (E.D.N.Y. Jan. 16, 2014), *adopted*, 2014 WL 1350350 (E.D.N.Y. Mar. 31, 2014). "Furthermore, courts should review a plaintiff's entire award to determine whether a front pay award is appropriate." *Brady*, 2005 WL 1521407, at \*7.

Here, I have recommended that plaintiff be awarded back pay for the entire three years and 83 days for which she sought a combination of back pay and front pay. Moreover, given that plaintiff worked at Habitot for a total of only five months, *see* Compl. ¶¶ 26, 47, it would be unduly speculative to assume that, but for her unlawful termination on March 1, 2022, she would have remained in that position through the date of judgment in this action (and beyond). I therefore conclude that the recommended back pay award "adequately redresses the loss that plaintiff is reasonably likely to have suffered." *Rodriguez*, 2014 WL 1347369, at \*6.

### 4.    Emotional Distress

As plaintiff correctly notes, *see* Pl. Mem. at 8, emotional distress damages are available for disability discrimination under the NYSHRL and the NYCHRL. *Pressley v. ABJ Home Care Inc.*, 2026 WL 880207, at \*8 (E.D.N.Y. Mar. 31, 2026); *Moreno*, 2025 WL 2555609, at \*11; *Kamiel v. Hai St. Kitchen & Co. LLC*, 2020 WL 1916534, at \*5 (S.D.N.Y. Mar. 17, 2020), *adopted*, 2020 WL 1911193 (S.D.N.Y. Apr. 20, 2020), *vacated in part on other grounds*, 2022 WL 1591580 (S.D.N.Y. May 19, 2022). Plaintiff attests, in a single sentence, that the termination of her employment by defendants "caused [her] emotional distress and persistent anxiety," for which she received therapy "on a weekly basis" from December 2022 to August 2023. Pl. Inquest Decl. ¶ 6. Plaintiff correctly characterizes her emotional distress claim as "garden variety," *see* Prop. Findings ¶ 22, and seeks damages of $30,000. *Id*.

In "garden variety" emotional distress claims, "the evidence of emotional harm is limited to the plaintiff's testimony, which describes his or her injuries in vague or conclusory terms, and fails to relate the severity or consequences of the injury. These claims typically lack extraordinary circumstances and are not supported by medical testimony." *Kamiel*, 2020 WL 1916534, at \*5 (quoting *Maher v. All. Mortg. Banking Corp.*, 2010 WL 3516153, at \*2 (E.D.N.Y. Aug. 9, 2010)). "Important factors in assessing an appropriate amount to award for emotional suffering include the amount, duration, and consequences of the claimant's emotional distress." *Jowers v. DME Interactive Holdings Inc.*, 2006 WL 1408671, at \*12 (S.D.N.Y. May 22, 2016) (internal quotations, alterations, and citation omitted). As a general rule, however, "[g]arden variety emotional distress claims lacking extraordinary circumstances and without medical corroboration generally merit $5,000 to $35,000 awards." *Kamiel*, 2020 WL 1916534, at \*6 (internal quotation marks and citation omitted); *accord Angulo v. 36th St. Hosp. LLC*, 2020 WL 4938188, at \*12 (S.D.N.Y. July 31, 2020), *adopted*, 2020 WL 4936961 (S.D.N.Y. Aug. 24, 2020); *Drice v. My Merch. Servs., LLC*, 2016 WL 1266866, at \*7 (E.D.N.Y. Mar. 4, 2016), *adopted*, 2016 WL 1266948 (E.D.N.Y. Mar. 31, 2016).

Here, plaintiff's testimony as to her emotional distress is both vague and conclusory. She identifies only one symptom, in generic terms: "persistent anxiety." Pl. Inquest Decl. ¶ 6. She makes no effort to explain the connection between that symptom and the termination of her employment at the Childcare Center on March 1, 2022. Nor does she describe how that symptom manifested or what impact, if any, her anxiety had on her professional or personal life. While she does attest to having sought mental health treatment – in the form of weekly therapy – her claim is somewhat weakened by her failure to explain why she initiated therapy in December 2022, which was nine months after defendants terminated her employment but only one month after she

filed this lawsuit. Plaintiff is therefore correct that her damages should be assessed at the "bottom of the range" for garden variety emotional distress. Prop. Findings ¶ 22; Pl. Mem. at 8.

In *Kamiel*, as here, the plaintiff's employment was terminated after she requested time off for surgery, 2020 WL 1916534, at *2. On inquest, she was awarded $15,000 for emotional distress, based on her "garden variety" testimony that since the termination, she had "been sleepless, suffered from headaches and anxiety," "cried frequently," and "often was unable to control [her] emotions." *Id*. at *6 (record citations omitted). She also stated that "[t]he anxiety from being terminated made [her] recovery more difficult . . . [and] contributed to [her] suffering from sepsis after the surgery." *Id*.; *see also Drice*, 2016 WL 1266866, at *7 (awarding $20,000 for emotional distress where plaintiff felt "offended, disturbed, and humiliated," suffered from "severe anxiety and depression as a result of Defendants' sexual harassment and discrimination," experienced days on which she "felt worthless and could not get out of bed," and attested that her emotional distress "affected her ability to eat and sleep"); *Jowers*, 2006 WL 1408671, at *3-4 (awarding $15,000 for emotional distress where plaintiff testified that defendant's hostile work environment caused her "continued stress, anger, sadness and frustration," was an "ongoing public humiliation" for her, caused her to "cry[] after leaving work most days," and left her with depression, accompanied by ongoing symptoms including "panic attacks, headaches, nausea, loss of appetite, severe bouts of insomnia and breaking out in hives"); *Manson*, 2013 WL 2896971, at *6 (S.D.N.Y. June 13, 2013) (awarding $10,000 for emotional distress based on plaintiff's vague and conclusory testimony that she had low self-esteem, felt "unworthy" and "was having a difficult time feeling trust").

In comparison to these cases, plaintiff Hollington has provided even less evidence concerning the "amount, duration, and consequences of [her] emotional distress." *Jowers*, 2006

26

WL 1408671, at *12. Consequently, rather than the $30,000 she seeks, I recommend that plaintiff be awarded $15,000 in emotional distress damages.

### 5.     Prejudgment Interest

Plaintiff seeks prejudgment interest on her back pay award. Pl. Mem. at 10-11; Prop. Findings ¶ 24. Prejudgment interest is designed "to prevent an employer from attempting 'to enjoy an interest-free loan for as long as it can delay paying out back wages.'" *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153-54 (2d Cir. 1992)). While an award of prejudgment interest is left to the discretion of the district courts, *see McIntosh v. Irving Trust Co.*, 873 F. Supp. 872, 882 (S.D.N.Y. 1995), the Second Circuit has made clear that "[t]o the extent . . . that damages awarded to the plaintiff represent compensation for lost wages, it is ordinarily an abuse of discretion not to include pre-judgment interest." *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998) (cleaned up).

Where, as here, "a judgment is based on violations of both federal and state law," courts in our Circuit frequently "appl[y] a federal interest rate, most commonly based on the average rate of return on one-year Treasury bills ('T-bills') for the relevant time period." *Thomas v. iStar Fin. Inc.*, 508 F. Supp. 2d 252, 264 (S.D.N.Y. 2007) (citations omitted); *accord Kuper v. Empire Blue Cross and Blue Shield*, 2003 WL 23350111, at *3 (S.D.N.Y. Dec.18, 2003). For prejudgment interest calculations involving back pay, courts in our Circuit typically "use[] the midpoint of the economic damages period as the starting date and compound[] interest annually." *Garcia Mejia v. Bahche Inc.*, 2026 WL 1370795, at *28 (E.D.N.Y. May 18, 2026) (quoting *Sanderson v. Leg Apparel LLC*, 2024 WL 898654, at *5 (S.D.N.Y. Mar. 1, 2024)) (collecting cases).

Here, the total recommended back pay award is $131,281.86; the midpoint of the damages period (March 1, 2022 through May 23, 2025) is October 11, 2023; and "the average rate of return on one-year Treasury bills" during the damages period, *Thomas*, 508 F. Supp. 2d at 264, was

4.34%.[10] In order to compound the interest annually at that rate, I performed the following calculations:

| Year | Beginning Principal | Annual Interest | Calculation | Daily Interest | Calculation |
|---|---|---|---|---|---|
| 10/11/23-10/10/24 | $131,281.86 | $5,697.63 | $131,861.31 x .0434 | N/A | N/A |
| 10/11/24-10/10/25 | $136,979.49 | $5,944.91 | $136,979.49 x .0434 | N/A | N/A |
| 10/11/25-10/10/26 | $142,924.39 | $6,202.92 | $142,924.39 x .0434 | $16.99 | $6,202.92 ÷ 365 |

As of June 30, 2026 – the date of this Report and Recommendation – interest has been accruing for two full years (October 11, 2023 through October 10, 2025) and 263 days (October 11, 2025 through June 30, 2026). Consequently, in accordance with the formula described above, plaintiff is entitled to prejudgment interest on the recommended back pay award in the amount of $16,110.91.[11] Assuming that a final judgment is entered on or before October 10, 2026, interest will continue to accrue on the back pay award, at the rate of $16.99 per day, from July 1, 2026 until that judgment is entered.

### 6.    Post-Judgment Interest

"Post-judgment interest is mandatory for civil money judgments recovered in federal district court pursuant to 28 U.S.C. § 1961(a)." *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Piccini MNM, Inc.*, 2021 WL 1791591, at *4 (S.D.N.Y. May 5, 2021) (citing *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004)). Section

---

[10] To calculate this rate, I used Federal Reserve data (*see* https://perma.cc/E9AJ-6JZL) to extract the one-year Treasury bill daily rates for the damages period (March 1, 2022 through May 23, 2025) and took the average of those rates.

[11] $5,697.63 for the period 10/11/23-10/10/24; $5,944.91 for the period 10/11/24-10/10/25; and $4,468.37 ($16.99 x 263) for the period 10/11/25-6/30/26.

1961(a) provides for post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).

### 7. Attorneys' Fees and Costs

The ADA, the NYSHRL, and the NYCHRL allow a prevailing party to recover her reasonable attorneys' fees, including litigation expenses and costs. *See* 42 U.S.C. § 12205; N.Y. Exec. L. § 297(10); N.Y.C. Admin. Code § 8-502(g); *accord Cruz v. Bar 9 Ent., Corp.*, 2025 WL 1397240, at *2 (S.D.N.Y. May 14, 2025). Plaintiff, who was represented throughout this litigation by attorney Alex Rissmiller, requests $8,949.40 in attorney's fees and costs. Pl. Mem. at 18.

To determine a "presumptively reasonable fee," courts in our Circuit use the lodestar method: multiplying a reasonable hourly rate by the reasonable number of hours required by the case. *See Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014); *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). District courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008).

In this case, attorney Rissmiller values his time at $350 per hour. Rissmiller Inquest Decl. ¶ 3. I find this rate to be reasonable for a partner at a small firm, *see* https://perma.cc/7FTM-VPHE, pursuing a single-plaintiff employment discrimination case. *See Range v. 230 W. 41st St. LLC*, 2020 WL 6729113, at *4 n.4 (S.D.N.Y. Nov. 16, 2020) ("Courts in this District have determined that a fee ranging from $250 to $450 per hour is generally appropriate for experienced civil rights . . . litigators."); *Chuk On Chan v. Good Chows Inc.*, 2017 WL 9538901, at *7 (S.D.N.Y. Mar. 3, 2017) (same), *adopted*, 2017 WL 6550689 (S.D.N.Y. Dec. 21, 2017).

Attorney Rissmiller attests that he spent 22.7 hours on this case, Rissmiller Inquest Decl. ¶ 3, and has submitted itemized time records detailing those hours. *See id*. Ex. 2 at ECF p. 2.

Further, Rissmiller states that he "exercised billing judgment and eliminated hours that were unnecessary, excessive, or spent on tasks that were administrative in nature." *Id.* ¶ 4. After careful review of counsel's time records, I find the total time expended on this action to be reasonable as well. *See, e.g., Mei Chun Poon v. Apple NYC Corp.*, 2019 WL 75674, at *11 (S.D.N.Y. Jan. 2, 2019) (collecting cases) (awarding fees for 24.6 hours spent drafting a complaint and a motion for default judgment).

Finally, attorney Rissmiller attests that he spent $1,004.40 on litigation costs, including the $402.00 filing fee and $602.40 in process server fees. Rissmiller Inquest Decl. ¶ 6. The docket of this action reflects that plaintiff paid a $402 filing fee, and her attorney has submitted supporting documentation for her process server fees. *See* Rissmiller Inquest Decl. Ex. 2 at ECF p. 4-7. I therefore find that plaintiff's request for reimbursement of litigation expenses is reasonable.

Multiplying the $350 hourly rate by the 22.7 hours worked produces the sum of $7,945.00, and adding the $1,004.40 in expenses brings the total to $8,949.40. Consequently, I recommend that plaintiff be awarded attorney's fees and expenses in the amount of $8,949.40.

## III.    CONCLUSION

For the reasons set forth above, I recommend, respectfully, that plaintiff be awarded damages in the amount of $155,231.26, consisting of $131,281.86 in back pay, $15,000 in emotional distress damages, and $8,949.40 in attorneys' fees and costs. In addition, plaintiff should be awarded $16,110.91 in prejudgment interest on the back pay award through the date of this Report and Recommendation, plus continuing prejudgment interest on that award, at the rate of $16.99 per day, until judgment is entered.

Dated: New York, New York
        June 30, 2026

_____
**BARBARA MOSES**
**United States Magistrate Judge**

30

## NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties have 14 days from this date to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), unless they receive this Report and Recommendation solely by mail, in which case they have 17 days from the date on which it was mailed. *See* Fed. R. Civ. P. 6(a), 6(d). Any objections must be filed with the Clerk of Court, addressed to the Hon. John G. Koeltl, and delivered to Judge Koeltl in accordance with his individual practices. Any request for an extension of the deadline to file objections must also be directed to Judge Koeltl. **Failure to file timely objections will result in a waiver of such objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018) (summary order); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).